UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JAMES KULBACKI,

    Plaintiff,

v.                                                  Case No: 2:17-cv-590-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## OPINION AND ORDER

Before the Court is Plaintiff James Donald Kulbacki's Complaint, filed on October 26, 2017. (Doc. 1). Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint legal memorandum detailing their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

I. **Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

    A. **Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do his previous work or any other

substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911. Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

### B. Procedural History

On September 3, 2013, Plaintiff filed an application for disability insurance benefits. (Tr. at 89, 171-79). Plaintiff asserted an onset date of October 3, 2012. (*Id.* at 73). Plaintiff's application was denied initially on December 2, 2013, and on reconsideration on March 11, 2014. (*Id.* at 89, 103). A hearing was held before Administrative Law Judge ("ALJ") Maria C. Northington on June 6, 2016. (*Id.* at 41-79). The ALJ issued an unfavorable decision on September 28, 2016. (*Id.* at 20-34). The ALJ found Plaintiff not to be under a disability from October 3, 2012, through the date of the decision. (*Id.* at 34).

On August 23, 2017, the Appeals Council denied Plaintiff's request for review. (*Id.* at 1-5). Plaintiff filed a Complaint (Doc. 1) in the United States District Court on October 26, 2017. This case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Doc. 17).

### C. Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[1] An ALJ must determine

---

[1] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through September 30, 2017. (Tr. at 22). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 3, 2012, the alleged onset date. At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: "post-laminectomy syndrome status-post anterior cervical discectomy and fusion (ACDF) in June 2013 secondary to cervical spine degenerative disc disease and implantation of SCS (spinal cord stimulator) in July 2015, adjustment disorder with anxiety and depression diagnosed in July 2016, impaired memory diagnosed in July 2016 with a rule-out of borderline intellectual functioning (BIF) (20 [C.F.R. §] 404.1520(c))." (*Id.*). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (*Id.* at 23).

At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of sedentary work as follows:

> After careful consideration of the entire record, in the abundance of caution, and with due consideration of the claimant's alleged pain complaints, the undersigned finds that the claimant has the residual functional capacity to perform a limited range of sedentary work as defined in 20 [C.F.R. §] 404.1567(a) such that the

claimant can sit for approximately six hours in an eight hour day, lift no more than 10 pounds, and occasionally lift and/or carrying articles such as docket files, ledgers, and small tools. A certain amount of walking and/or standing is often necessary to carry out job duties (20 [C.F.R. §] 404.1567 and Social Security Ruling 83-10). The claimant is limited to sitting for six hours in an eight-hour workday. He is capable of standing and/or walking for up to TWO hours in an eight-hour workday. In the course of work, he should be allowed the ability to optionally alternate between sitting and standing about every 30 minutes, but such would not cause him to be off-task or leave the work-station. He retains the capacity to perform occasional postural functions of climbing ramps and stairs and stooping. He is to perform no crawling, no kneeling, no crouching and no climbing of ladders, ropes and scaffolds. The claimant is to perform no overhead lifting, no overhead carrying, and no overhead reaching with the bilateral upper extremities. The claimant is to perform no constant fine manipulations with the left non-dominant upper extremity, however, frequent, occasional and gross manipulations remain intact. The right dominant upper extremity manipulations are not affected. Secondary to his mental impairments, he retains the capacity to understand, remember and carry-out simple instructions and perform simple routine tasks as consistent with unskilled work.

(*Id.* at 25).

The ALJ determined that Plaintiff was unable to perform any past relevant work as a construction laborer. (*Id.* at 32). The ALJ considered Plaintiff's age, education, work experience, and RFC, and found that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (*Id.* at 33). The ALJ noted that the vocational expert identified the following representative occupations that an individual with Plaintiff's age, education, work experience, and RFC would have been able to perform : (1) order clerk (food and beverage), DOT # 209.567-014, sedentary exertional level, and SVP 2; and (2) call out operator, DOT # 237.367-014, sedentary exertional level and SVP 2. (*Id.* at 33).[2] The ALJ concluded that Plaintiff was not under a disability from October 3, 2012, through the date of the decision. (*Id.* at 34).

---

[2] "DOT" refers to the *Dictionary of Occupational Titles*.

### D. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II. Analysis

On appeal, Plaintiff raises two issues. As stated by the parties, they are:

(1) Whether the ALJ offered good cause for rejecting Dr. Frey's opinion.

(2) Whether the ALJ offered an adequate explanation for rejecting Plaintiff's testimony about his impairments.

(Doc. 18 at 14, 18). The Court addresses each of these issues in turn.

## A. Whether the ALJ Properly Weighed Dr. Frey's Opinion

Plaintiff argues that the ALJ did not offer good cause for rejecting the opinion of Plaintiff's treating physician, Dr. Frey. (Doc. 18 at 14). Plaintiff claims that the ALJ's conclusion that Dr. Frey's opinion was not supported by his treatment records is not supported by substantial evidence of record. (*Id.* at 15).

The Commissioner asserts that the ALJ properly considered the opinion evidence, including Dr. Frey's opinions, when deciding Plaintiff's claim. (*Id.* at 16). Further, the Commissioner argues that the ALJ provided good reasons supported by substantial evidence for giving little weight to Dr. Frey's opinion. (*Id.* at 17).

Michael Frey, M.D. was one of Plaintiff's treating physicians. (*See, e.g.*, Tr. at 474-525). Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the ALJ's RFC determination at step four. *See Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).

The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir.

2004). The Eleventh Circuit has concluded that good cause exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.*

*ALJ's Summary of Dr. Frey's Treatment Notes*

In the instant case, the ALJ thoroughly summarized Dr. Frey's medical records. (Tr. at 28-32). The Court highlights some of the ALJ's summary without repeating all of the findings. (*Id.*). The ALJ discussed Plaintiff's evaluations by Dr. Frey in February and April 2013, noting the following: the MRI results; a surgery that occurred for left-sided carpal tunnel syndrome; prescribed pain medications; normal wrist strength and range of motion; pain in shoulder and upper arm; difficulty lifting; normal gait, extremity strength and tone; and overall conservative care. (*Id.* at 27). The ALJ discussed Dr. Frey's treatment notes of Plaintiff's June, July, August, September, and October 2013 visits. (*Id.* at 28). In these treatment notes, the ALJ noted Plaintiff's complaints of pain, prescribed medications, unremarkable portions of the examinations, and limitations with range of motion. (*Id.*).

The ALJ noted the following in December 2013 examination:

> Follow up with Dr. Frey in December 2013 showed claimant to report 50% improvement in his neck and left arm pains. His cervical pain remained mild. Pain in his left hand with numbness continued. Examination showed normal neurological function including sensation and reflexes but for deep tendon reflex in the left arm. Cervical and left arm inspection was otherwise unremarkable. Claimant's strength was full but for his left bicep. His gait was normal. His left shoulder showed a decreased range of motion. Overall, upper extremity strength was unremarkable. Claimant was diagnosed with post-laminectomy symptoms. Neuro-stimulation was recommended in January 2014. He continued to receive narcotic pain medications (9F).

(*Id.*).

The ALJ noted that examinations from February through April 2014 showed the following: at least moderate constant neck pains; normal gait; decreased left-shoulder range of motion; pain with range of motion; upper extremity strength intact; limited range of motion for cervical spine; left-arm motor function and sensation unremarkable; and prescribed medication. (*Id.* at 28-29). The ALJ noted that at the May 2014 visit, Plaintiff reported a new onset of lower extremity numbness, but otherwise, Plaintiff's physical examination was unchanged. (*Id.* at 29). The ALJ also summarized Dr. Frey's treatment notes of Plaintiff's July, August, September, October, November, and December 2014 visits as well as the January, March, April, May, June, July, August 2015, and January 2016 visits. (*Id.*). In these summaries, the ALJ noted Plaintiff's complaints of pain and limitations in range of motion, but also noted when Plaintiff's strength was normal, range of motion was pain free, gait was normal, upper extremity neurological and sensory functions were normal, cervical range showed no restrictions, and pain was adequately controlled by medication. (*Id.*).

The ALJ also summarized Dr. Frey's April 2016 treatment notes that indicated Plaintiff's pain level increased to 8/10, but in the prior visits the pain level was 4/10. (*Id.*). The ALJ noted that the treatment note indicated no acute distress and no explanation for the increased pain level at this visit. (*Id.*).

*Dr. Frey's Medical Statements, RFC Questionnaire, Listings Statements*

On October 2, 2015, Dr. Frey completed a Medical Statement Regarding Shoulder Problems for Social Security Disability Claim. (*Id.* at 757). Dr. Frey indicated that Plaintiff had limitation of motion in both his left and right shoulder. (*Id.*). Dr. Frey indicated that Plaintiff could: work one hour per day; stand 15 minutes at one time; not stand, sit at one time, or sit in a

8

work day; occasionally and frequently lift 5 pounds; never use left or right arm below shoulder level; and occasionally use left and right arm over shoulder level. (*Id.*).

On October 2, 2015, Dr. Frey also completed a Medical Statement Regarding Cervical Spine Disorders for Social Security Disability Claim. (*Id.* at 759). Dr. Frey indicated Plaintiff had limitations of motion of the spine, inability to perform fine and gross movements, inability to prepare meals and take care of personal hygiene, severe burning or painful dysesthesia, and a need to change position more than once every two hours. (*Id.*). Dr. Frey also found Plaintiff's pain severe, with Plaintiff being able to work 1 hour, stand for 15 minutes at one time, sit for 15 minutes at one time, occasionally lift 5 pounds, not lift any weight frequently, and unable to rotate his neck to the right, rotate his neck to the left, elevate his chin, and bring his chin to neck. (*Id.*).

On this same date, Dr. Frey completed the same form for Low Back Pain. (*Id.* at 760). Dr. Frey found Plaintiff had pain, limitation of motion of the spine, motor loss, and sensory or reflex loss. (*Id.*). Dr. Frey found Plaintiff's pain mild, repeated his findings from the prior Medical Statements, and added that Plaintiff could lift 5 pounds frequently, never bend, and never stoop. (*Id.*).

On this same date, Dr. Frey also completed a Residual Functional Capacity Questionnaire. (*Id.* at 761-63). Dr. Frey found Plaintiff able to sit 3 hours, stand 3 hours, and walk 3 hours in an 8-hour workday, but could only work for a total of 2 hours in an 8-hour workday. (*Id.* at 761). Dr. Frey found Plaintiff could lift 10 pounds continuously, carry 10 pounds continuously, could grasp, push pull, and do fine manipulations but had some unspecified limitations. (*Id.*). Dr. Frey found Plaintiff had no limitations in operating foot controls, and

could occasionally bend and squat, but never crawl, climb, reach above, stoop, crouch, or kneel. (*Id.* at 762). Dr. Frey found Plaintiff's pain severe. (*Id.*).

Dr. Frey also completed two (2) Listings statements finding that Plaintiff met Listing 1.02, Major Dysfunction of a joint and Listing 1.04, Disorders of the spine due to evidence of nerve root compression. (*Id.* at 756, 758). Neither of these documents explained these findings or cited to any treatment notes of record.

*Analysis*

In this case, the Court finds that the ALJ demonstrated good cause to afford little weight to Dr. Frey's opinion as to Plaintiff's limitations. Specifically, the Court finds that the ALJ's finding that Dr. Frey's limitations are inconsistent with his treatment notes is supported by substantial evidence. An ALJ may show good cause to discount a treating physician's opinion by showing that the opinion is conclusory or is inconsistent with the physician's treatment records. *See Phillips*, 357 F.3d at 1240.

Here, the ALJ afforded little weight to Dr. Frey's opinion that Plaintiff could work for only one hour, could lift no more than 5 pounds, could stand for no more than 15 minutes, could not use either arm below shoulder level, and could not rotate his neck at all, as well as other listed extreme limitations. (*Id.* at 32). The ALJ found that these extreme limitations were "wholly inconsistent with Dr. Frey's own treatment notes which showed consistently normal clinical observations and examinations." (*Id.*). Further, the ALJ afforded little weight to Dr. Frey's opinion that Plaintiff's condition met the requirements of Listings 1.02 and 1.04 "as the opinions do not indicate with factual specificity the basis for the opinion and the opinions are inconsistent with the totality of the treatment record which showed involvement of only one

upper extremity, a normal gait, and repeated cervical MRI after fusion surgery showed no evidence of neural compromise (21F)." (*Id.*).

As stated above, the ALJ thoroughly summarized Dr. Frey's treatment notes. (Tr. at 28-32). In this summary, the ALJ noted Plaintiff's complaints of pain, limitations in range of motion, pain medication prescriptions, and treatments. (*Id.*). However, the ALJ also discussed the many treatment notes that indicated no pain or tenderness, unremarkable strength in the upper extremities, only slight or no limitations in range of motion, and examinations that were essentially normal. (*Id.* at 31). The Court finds that the ALJ considered Dr. Frey's treatment notes as a whole when determining that Dr. Frey's treatment notes do not support the extreme limitations found in the forms completed by Dr. Frey.

In addition, in these forms, Dr. Frey does not support or explain these extreme limitations, but simply checks boxes or circles answers with no further explanation. As the ALJ found, the Court cannot reconcile the many times that Plaintiff's examinations were within a normal or near normal range with the extreme limitations found by Dr. Frey without further support or explanation.

Accordingly, the Court finds that the ALJ articulated good cause to afford Dr. Frey's opinion little weight. Further, the Court finds that the ALJ's decision as to this issue is supported by substantial evidence.

### B. Whether the ALJ Properly Considered Plaintiff's Subjective Statements

Plaintiff argues that the ALJ erred by not providing a sufficient explanation for rejecting Plaintiff's testimony. (Doc. 18 at 19). Plaintiff claims that the ALJ's finding that Plaintiff's testimony was inconsistent with the medical notes in the record is not supported by substantial evidence. (*Id.*). Plaintiff also claims that the ALJ did not address the limited nature of Plaintiff's

activities of daily living and did not address the factors that precipitate or aggravate Plaintiff's pain. (*Id.*).

The Commissioner contends that the ALJ properly considered Plaintiff's subjective statements, together with the other evidence in assessing Plaintiff's RFC. (*Id.* at 21). Further, the Commissioner argues that substantial evidence supports the ALJ's determination that Plaintiff's statements regarding the intensity, persistence, and functionally limiting effects of his alleged symptoms were not supported by the medical evidence and other evidence of record. (*Id.*).

To establish disability based on testimony of pain and other symptoms, a plaintiff must satisfy two prongs of the following three-part test: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.3d 1221, 1223 (11th Cir. 1991)). After an ALJ has considered a plaintiff's complaints of pain, the ALJ may reject them as not credible, and that determination will be reviewed to determine if it is based on substantial evidence. *Moreno v. Astrue*, 366 F. App'x 23, 28 (11th Cir. 2010) (citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)).

If an ALJ discredits the subjective testimony of a plaintiff, then he must "articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225 (citations omitted). "A clearly articulated credibility finding with

substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995)).[3]

Here, the ALJ found that Plaintiff's medially determinable impairments could reasonably be expected to cause the alleged symptoms. (Tr. at 30). However, the ALJ found that Plaintiff's statements concerning intensity, persistence, and the limiting effects of these symptoms "are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in the decision." (*Id.*). The ALJ then explained the reasons for her decision in great detail. (*Id.* at 30-31).

The ALJ began by considering Plaintiff's alleged cervical spinal condition. (*Id.* at 30). The ALJ considered the totality of the medical evidence and found that it did not support Plaintiff's subjective complaints. (*Id.*). The ALJ specifically cited to the "repeated examination[s] over the course of several years [that] showed largely normal motor function, sensory function, and strength." (*Id.*). The ALJ then determined that diagnostic imaging did not show abnormalities consistent with Plaintiff's reports of limitations and Plaintiff's subjective reports. (*Id.*).

The ALJ very thoroughly supported her findings as follows:

> While MRI of the spine before claimant's surgery in 2013 showed significant abnormalities, subsequent MRI in August 2013 and May 2015 showed no significant compression with minimal other abnormality and no neural compromise. X-ray showed good alignment of the claimant's hardware. This objective evidence does not support the claimant's reports of severe ongoing

---

[3] Effective March 28, 2016, SSR 16-3p superseded SSR 96-7p. *See* SSR 16-3p, 2016 WL 1119029 (March 16, 2016). SSR 16-3p explains that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." *Id.* The Commissioner republished SSR 16-3p in October 2017. 82 Fed. Reg., 49,462 (Oct. 25, 2017).

> limitation. Shortly after claimant's accident in October 2012, Primary care exam in November 2012 was generally normal with no swelling, redness, tenderness, full grip strength, a normal range of motion, negative straight leg raise, normal coordination, normal sensory function, normal motor function, and normal reflexes. In January 2013 examination of the cervical spine showed a painless range of motion, no tenderness, and no motor or sensory deficit. His strength and sensory function appeared intact. EMG/NCV at the same time showed no cervical pathology.
>
> In summer 2013, after his fusion procedure, claimant reported his left arm numbness had resolved. While he continued to report neck pains to Dr. Frey, examination noted cervical no pain or tenderness, coordination and fine motor skills were preserved, and pain was only seen with motion extremes. In December 2013, claimant reported only mild cervical pains. Neurological and sensory function were largely unremarkable. Cervical exam and strength were essentially normal. Overall upper extremity strength was unremarkable. These findings do not support the severity of the claimant's subjective complaints. Into 2014, claimant continued to report neck pains however but for a decreased range of motion, examination was unremarkable with intact strength and functionality. In July, upper extremity sensation and motor function were unremarkable. Range of motion in the cervical spine was normal. In late 2014, range of motion in the cervical spine was only mildly decreased. In January 2015, claimant had normal upper extremity neurological and sensory function. Cervical range of motion showed no restriction. Physical examination in March, April, and May 2015 were unremarkable with normal neck exam, neurological exam, and sensory exam despite the claimant's subjective complaints. In August and October 2015, claimant reported to his primary care provider no acute neck or back complaints, no numbness, no tingling, and no weakness. Follow up with Dr. Frey in 2016 continued to show no weakness or numbness. All of the foregoing tend to suggest that the claimant is not as limited as is alleged.

(*Id.* at 30-31). In addition, the ALJ noted that Plaintiff stated that he was able to perform his personal care independently, but did not cook, clean, or do chores due to his physical condition. (*Id.* at 30).

The Court finds that in the decision, the ALJ articulated an in-depth analysis of Plaintiff's subjective symptoms, the medical evidence, and the other evidence of record including Plaintiff's activities of daily living. (*Id.* at 28-32). The ALJ provided clearly articulated reasons supported by substantial evidence of record to find some of Plaintiff's statements concerning the

intensity, persistence, and limiting effects of his symptoms not to be entirely consistent with the medical evidence. The ALJ cited to a multitude of treatment records to support her conclusions.

Further, the ALJ credited some of Plaintiff's subjective symptoms as evinced by the limitations in the RFC, such as the following: (1) lift no more than 10 pounds, and occasionally lift and/or carry articles such as docket files, ledgers, and small tools; (2) ability to optionally alternate between sitting and standing about every 30 minutes; (3) perform occasional postural functions of climbing ramps, climbing stairs, and stooping; (4) perform no crawling, no kneeling, no crouching, and no climbing of ladders, ropes and scaffolds; and (5) no overhead lifting, no overhead carrying, and no overhead reaching with the bilateral upper extremities. (*Id.* at 25).

Accordingly, the Court finds that the ALJ did not err in her subjective symptom determination and this determination is supported by substantial evidence.

## III. Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that substantial evidence supports the ALJ's decision and the decision was decided upon proper legal standards.

It is hereby **ORDERED** that:

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on February 4, 2019.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties